IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**ANNE ROOT**, and
**MYRON ROOT & CO. INC.**,

        Plaintiffs,

    **v.**

**THE HANOVER INSURANCE
COMPANY**,

        Defendant.

**Case No. 1:22-cv-01104-MC**
**ORDER AND OPINION**

**MCSHANE, Judge:**

    The issue is, what are growing crops?[1] Today, the Court considers the application of an insurance policy as it applies to damaged, unharvested pears before Plaintiffs could process them into cider. Def.'s Mot. for Partial Summ. J. ("MPSJ"), ECF No. 23. This action arises from a contract dispute between a Southern Oregon winery and the winery's insurer.

    After reviewing the parties' respective pleadings and holding oral argument, the Court finds that Plaintiffs' damaged pears are unambiguously excluded from the policy's coverage as "stock," and that Plaintiffs' claimed losses are not covered under two alternate provisions of the Policy. Defendant's Motion for Partial Summary Judgment (ECF No. 23) is GRANTED.

---

[1] *See Frigaliment Importing Co. v. B.N.S. Int'l Sales Corp.*, 190 F. Supp. 116, 117 (S.D.N.Y. 1960) ("The issue is, what is chicken?").

1 – OPINION AND ORDER

## BACKGROUND

Plaintiffs own and operate a commercial vineyard that produces and sells pear cider. Pls.' Resp. 1, ECF No. 26. Plaintiffs cultivate a specific, non-native variety of pear that has a high sugar content ideal for cider production. *Id*. To protect their business and property, Plaintiffs took out an insurance policy with Defendant Hanover Insurance Company for the policy period of June 20, 2020 to June 20, 2021. MPSJ 4; *see also* Tapper Decl. Ex. 1, 2 (collectively, the "Policy").

In September 2020, a wildfire adjacent to Plaintiffs' winery subjected Plaintiff's pear trees to severe heat and smoke, causing the trees to prematurely drop twelve tons of unharvested fruit. MPSJ 3. Plaintiffs attempted to salvage the dropped pears but found them unfit for cider production. Pls.' Resp. 4; Tapper Decl. Ex. 4, at 4, ECF No. 28.

Hoping to recover their losses, Plaintiffs submitted an insurance claim under the Policy, seeking $30,000 for the loss of their pears, and $172,014 in business income loss. Tapper Decl. Ex. 4, at 4–5. Defendant partially compensated Plaintiffs for physical damages to the winery's buildings and other personal property, but Defendant rejected Plaintiffs' claim for the lost pears. *Id*. at 2–4; Tapper Decl. Ex. 3, at 2–3.

On July 28, 2022, Plaintiffs filed this action and asserted four claims against Defendant: (1) breach of contract for failure to pay claims, (2) breach of contract for failure to appraise, (3) breach of duty of good faith and fair dealing, and (4) negligence per se violations of the Oregon Unfair Claims Practices Act. While discovery was still ongoing, Defendant filed this motion to resolve claims that would be dispositive of some, but not all, of Plaintiffs' claimed damages.

## STANDARDS

"Interpretation of an insurance policy is a question of law, and [the Court's] task is to ascertain the intention of the parties to the insurance policy." *Halloway v. Republic Indem. Co. of*

2 – OPINION AND ORDER

*Am.*, 147 P.3d 329, 333 (Or. 2006). The Court "determines the intention of the parties based on the terms and conditions of the insurance policy." *Hoffman Constr. Co. v. Fred S. James & Co.*, 826 P.2d 703, 706 (Or. 1992) (citation omitted).

If an insurance policy explicitly defines the phrase in question, the Court applies that definition. *Halloway*, 147 P.3d at 333. But if the policy does not define the phrase in question, the Court uses a two-step interpretive framework to discern the parties' intended meaning. *Id*. Under the first step, the Court considers "whether the phrase in question has a plain meaning, *i.e.*, whether it is susceptible to only one plausible interpretation." *Id*. (citation and quotation omitted). "If the phrase in question has a plain meaning, we will apply that meaning and conduct no further analysis." *Id*.

If, however, the phrase in question has more than one plausible interpretation, then the Court proceeds to the second step and "examine[s] the phrase in light of the particular context in which the phrase is used in the policy and the broader context of the policy as a whole." *Id*. at 334 (citation and quotation omitted) (cleaned-up). "If the ambiguity remains after the court has engaged in those analytical exercises, then any reasonable doubt as to the intended meaning of such a term will be resolved against the insurance company[.]" *North Pac. Ins. Co. v. Hamilton*, 22 P.3d 739, 742 (Or. 2001) (citations and quotations omitted) (cleaned-up).

## **DISCUSSION**

The parties ask the Court to analyze two specific terms within the Policy: "stock" and "growing crops." Generally, the Policy generally provides coverage for business personal property defined as "stock" but not "growing crops." Plaintiffs claim that the unharvested pears should be

covered by the Policy as "stock." Defendant disagrees, and argues that the pears are excluded from coverage as "growing crops" even if the Court finds them to be "stock."

In relevant part, the Policy provides:

**A. COVERAGE**. We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause or Loss.

**1. Covered Property**
**b. Your Business Personal Property** consists of the following property located . . . within [2000] feet of the building or structure or within [2000] feet of the premises described in the Declarations, whichever distance is greater:
**(3) "Stock";**

\*\*\*

**2. Property Not Covered**. Covered Property does not include:
**h.** Land[,] water, **growing crops** or lawns[;]
**q.** The following property while outside of buildings:
**(1)** Grain, hay, straw or **other crops**;
**(2)** [T]rees, shrubs or plants (**other than trees, shrubs[,] or plants which are "stock" . . . ,**) except as provided in the Coverage Extensions.

\*\*\*

**5. Coverage Extensions**
**e. Outdoor Property**
**(1)** You may extend insurance . . . to apply to your . . . trees, shrubs, plants and lawns **which are "stock"** . . . caused by or resulting from . . . (a) Fire[.]
**h. Definitions**
**(3) "Stock"** means merchandise held in storage or for sale, raw materials and in-process or finished goods, including supplies used in their packing or shipping.

Bennett Decl., ¶ 2, Ex. 1, at 1–18, ECF No. 24 (emphasis added).

## I.    <u>The Unharvested Pears are Not "Stock"</u>

The first question before the Court is whether Plaintiffs' pears fit within the definition of "stock." The Policy explicitly defines "stock" as "merchandise held in storage or for sale, raw materials and in-process or finished goods, including supplies used in their packing or shipping."

4 – OPINION AND ORDER

Bennett Decl., Ex. 1, at 10. The Policy, however, does not define the phrase "raw materials." According to Plaintiffs, the unharvested pears are the "raw materials" used to produce cider within their business of producing and selling cider. Pls.' Resp. 4. Defendant argues that the pears are not "stock" until they are harvested and prepared for processing. Def.'s Reply 3, ECF No. 29.

Under Oregon's framework for contract interpretation, the Court first considers whether the phrase "stock" has a plain meaning. Since the Policy defines "stock," the Court applies that definition. *See Halloway*, 147 P.3d at 333. But because the Policy does not explicitly define "raw materials," the Court may consider that phrase in light of "the particular context in which the phrase is used in the policy and the broader context of the policy as a whole." *Hoffman*, 985 P.2d at 1289.

For Plaintiffs to successfully argue that "raw materials" is an ambiguous term, they need to present a second plausible interpretation. But Plaintiffs fail to do so. Rather that explain how the term is ambiguous, Plaintiffs throw their hands up and blame Defendant for drafting a blanketly ambiguous policy:

> The Court:    I'm just struggling with this idea that [unharvested pears] become stock simply because they were close to being harvested[.]
>
> Plaintiffs:    Well, yes. And I think that the fact that we are wrestling with this, and the fact that the Court is asking [Defendant's Counsel for] his definition, is really Plaintiffs' point here. Because Oregon law is really clear that the insurance company has the ability to write the policy in the manner they see fit.

Oral Argument Tr. 8 (cleaned up), ECF No. 32.

A contract "is not ambiguous merely because a party to it, often with 20/20 hindsight colored by self-interest, disputes an interpretation which is logically compelled." *Manley v. City of Coburg*, 387 P.3d 419, 423 (Or. App. 2016) (quoting Samuel Williston, 11 Williston on

Contracts § 30:4 (4th ed. 2016)). Plaintiffs seem to want ambiguity to be assumed; but the Court needs it to be established.

Defendant, on the other hand, presents a plausible definition: a raw material is ready for processing. Def's. Reply 3. In this context, harvested pears are raw materials because they are ready to be processed into cider. But Plaintiffs' unharvested pears are too far a step removed.

Even if Plaintiffs had presented a plausible, conflicting definition, the context by which the Policy uses "stock" and "raw materials" strongly support for Defendant's argument. By way of example, Black's Law Dictionary defines a "raw material" as the "basic substances found in their natural, modified, or semi processed state, used as an input to a production process for subsequent modification or transformation into a finished good."[2] Applying that definition to the facts at-hand, harvested pears may be "ready to be used as an input" in the production of cider. Unharvested pears, however, are not yet ready to be "subsequent[ly] modifi[ed] or transform[ed]."

Plaintiffs' argument fails under both steps of the interpretive framework for contract interpretation. *See Halloway*, 147 P.3d at 333. Plaintiffs' unharvested pears are unambiguously not "stock" under the Policy.[3]

## II.    <u>Alternate Policy Provisions</u>

Additionally, Plaintiffs argue that the pears and unproduced cider should be covered under two alternate provisions of the Policy: the "Distilled Spirits and Wines" endorsement and the "Business Interruption Coverage." Pls.' Resp. 9–11. Defendant contends that neither provision applies.

---

[2] Raw Material Definition, *Black's Law Dictionary* (2d ed. 1910), *available* online, https://www.legalbluebook.com/bluebook/v21/bluepages/b18-the-internet/b18-1-full-citation?id=328860&tokens=website#b-328861.

[3] Because the unharvested pears are not "stock" under the Policy, the Court need not consider whether the pears would be further excluded as "growing crops."

### A. **Business Interruption Coverage**

The "Distilled Spirits and Wines" endorsement provides coverage for the loss of profits related to alcohol sales. Pls.' Resp. 9. In relevant part, the endorsement provides as follows:

**C. Wines Market Value**
 1. We will determine the value of "bottled winery products", in the event of a loss or damage, at **the price the "stock"** could have been sold for as case goods as of the time and place of loss or damage, if no loss or damage occurred.
 ***
**E. Definitions**
 1. **"Bottled Winery Products"** means wine and other winery products:
  **a.** In the bottle; or
  **b.** Not buttled, but:
   **1)** Irreplaceable in kind and quality; and
   **2)** In the ordinary course of your business, would be:
    **i.** Bottled; and
    **ii. In your hands as producer or processor.**

Tapper Decl. Ex. 2, at 39–40, ECF No. 28. (emphasis added).

The Court finds that the Distilled Spirits and Wines endorsement does not apply for two reasons. First, as discussed, the pears are not "stock" under the Policy. The Distilled Spirits and Wines endorsement does not redefine "stock," and the definition of the term remains consistent throughout the Policy. Second, the unharvested pears were not in Plaintiffs' hands as producer or processor. Instead, they were still growing in the winery's orchard, outside of Plaintiffs' control.

### B. **Business Income Coverage**

The "Business Income Coverage" provision generally provides coverage for the suspension of operations due to property damage. MPSJ 11. In relevant part, the provision provides:

**A. COVERAGE—(1) Business Income**. We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration." The "suspension" must be caused by direct physical loss of or damage to property at premises which are described in the Declarations[.] The

loss or damage must be caused by or result from a Covered Cause of Loss. With respect to loss of or damage to personal property in the open . . . the described premises include the area within [2000] feet of such premises.

**F. DEFINITIONS**.

    **2.** "Operations" means: (a) Your business activities occurring at the described premises[.]

    **3.** "Period of restoration" means the period of time that:

        **a.** Begins:

            **1)** 72 hours after the time of direct physical loss or damage for Business Income Coverage; or

            **2)** Immediately after the time of direct physical loss or damage for Extra Expense Coverage;

        Caused by or resulting from any Covered Cause of Loss at the described premises; and

        **b.** Ends on the earlier of:

            **1)** The date when the property at the described premises should be repaired . . . or replaced with reasonable speed and similar quality; or

            **2)** The date when business is resumed at a new permanent location**.**

    **6.** "Suspension" means:

        a. The slowdown or cessation of your business activities[.]

Bennett Decl., Ex. 1 at 17–18.

Defendant argues that a business income loss must be caused by direct physical loss or damage at either of the two buildings identified in the Declarations. MPSJ 11–12; Def.'s Reply 7. Plaintiffs argue that the endorsement protects the winery's retail space—the location listed in the Declaration—from net income lost due to Plaintiffs' lack of inventory. Pls.' Resp. 11.

The Court again agrees with Defendant. Any covered loss would need to be The claimed business income loss was caused by the loss of unharvested pears growing in the winery's orchard. While Plaintiffs' pears may have been growing within the covered premises, their loss was not caused by a "direct physical loss of" or "damage to" Plaintiff's covered property.

**<u>CONCLUSION</u>**

8 – OPINION AND ORDER

Because Plaintiffs' damaged pears are unambiguously excluded from the policy's coverage as "stock," and because Plaintiffs' claimed losses are not covered under two alternate provisions of the Policy. Defendant's Motion for Partial Summary Judgment (ECF No. 23) is GRANTED. IT IS SO ORDERED.

DATED this 26th day of August, 2024.


_____/s/ Michael J. McShane_____
Michael McShane
United States District Judge